IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
Eastern Division

| | |
|---|---|
| **UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,**<br><br>Plaintiff,<br><br>v.<br><br>**TEGRA MEDICAL, LLC,**<br><br>Defendant. | **CIVIL ACTION NO. 1:20-cv-11344**<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of sex and to provide appropriate relief to Charging Party, Zahira Custodio Othman. As alleged with greater particularity in paragraphs 12-16 below, the Equal Employment Opportunity Commission alleges that Defendant, Tegra Medical, LLC, d/b/a Tegra Medical, violated Title VII by subjecting Charging Party to a hostile work environment based on her sex. The Commission further alleges that Defendant retaliated against Charging Party for objecting to and complaining about the sexually hostile work environment by denying her leave to which she was entitled under the Family and Medical Leave Act, resulting in her constructive discharge.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Sections 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-5(f)(1) and (3) ("Title VII") and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were and continue to be committed within the jurisdiction of the United States District Court for the District of Massachusetts.

## PARTIES

3. Plaintiff, the U.S. Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII, and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. §§ 2000e-5(f)(1) and (3).

4. At all relevant times, Defendant Tegra Medical, LLC ("Defendant" or "Tegra"), a Delaware corporation, has continuously been doing business in the State of Massachusetts, and has continuously had at least 15 employees.

5. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

## ADMINISTRATIVE PROCEDURES

6. More than thirty days prior to the institution of this lawsuit, Charging Party Zahira Custodio Othman ("Custodio" or "Charging Party") filed a charge with the Commission alleging violations of Title VII by Defendant.

7. On April 21, 2020, the Commission issued a Letter of Determination to Defendant notifying Defendant that the Commission found reasonable cause to believe that Defendant violated Title VII, and inviting Defendant to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

8. The Commission engaged in communications with Defendant to provide Defendant the opportunity to remedy the discriminatory practices described in the Letter of Determination.

9. The Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

10. On June 12, 2020, the Commission issued to Defendant a Notice of Failure of Conciliation advising Defendant that the Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

11. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

12. Since at least June 2017, Defendant has engaged in unlawful employment practices in violation of Section 703(a)(1) of Title VII, 42 U.S.C. 2000(e)-2(a)(1), by subjecting Charging Party to a hostile work environment based on sex.

   a. Defendant Tegra operates a manufacturing facility in Franklin, Massachusetts.

   b. As of November 2010, Ivan Pacheco was employed by Defendant as a Machine Operator at Defendant's Franklin, Massachusetts facility.

   c. Pacheco is male, and speaks Spanish and English.

   d. In 2013, Defendant promoted Pacheco to the position of Manufacturing Supervisor.

e. As a Manufacturing Supervisor, Pacheco's "Key Job Responsibilities" included "[e]ffectively manag[ing] personnel resources within [his] group including training, hiring, disciplinary actions and improving the performance of the team."

f. In June 2017, Zahira Custodio Othman began working for Defendant as a Grit Blast Operator at Defendant's Franklin, Massachusetts location.

g. Custodio is female, and a Spanish speaker.

h. Custodio reported to Pacheco, who was her direct supervisor.

i. Other Tegra employees warned Custodio that Pacheco was a "predator."

j. Shortly after her hire, Pacheco began subjecting Custodio to unwelcome conduct and comments of a sexual nature, including but not limited to:

   i. Commenting on her appearance and body on a daily basis, including telling her she looked sexy;

   ii. Frequently staring at her breasts;

   iii. Commenting to Custodio regarding other female employee's buttocks;

   iv. Telling other female employees that Custodio looked so good;

   v. Asking Custodio out to eat, which Custodio declined; and

   vi. Making unwanted sexual advances.

k. Custodio did not want Pacheco's attention, tried to ignore him, and declined his invitations.

l. While Custodio later began reporting to a different manager, Pacheco's harassment continued, including but not limited to:

   i. Telling Custodio that seeing other men train her made him jealous;

    ii. Regularly squeezing by Custodio in tight spaces;

    iii. Commenting on Custodio's buttocks, asking her to keep walking so he could look at them. When Custodio called Pacheco a stalker, he laughed;

    iv. Telling Custodio she looked "natural," squeezing her shoulder and hugging her;

    v. When Custodio hugged another male employee, Pacheco asked "Where's mine?";

    vi. When Custodio approached her new manager with an issue, Pacheco would say he was hurt that Custodio didn't call him; and

    vii. When Custodio asked Pacheco to bring her a souvenir from his trip to Philadelphia, Pacheco asked "What size thong?"

m. Pacheco's conduct was unwelcome and made Custodio uncomfortable and uneasy.

n. Pacheco discouraged Custodio from complaining, telling her that others tried to get him into trouble, but that he was a victim and the company believed in him.

o. On or about December 6, 2018, despite Pacheco's discouragement, Custodio complained to Debra Kling, Defendant's Human Resources Generalist, about Pacheco's unwelcome sexual conduct and comments.

p. As Custodio is a Spanish speaker, another Tegra employee acted as her interpreter during the conversation with Kling.

q. As detailed in paragraph 13 *infra,* in retaliation for Custodio raising this complaint about the ongoing sexual harassment to Kling, Defendant constructively discharged Custodio.

    r. During Custodio's exit interview on December 28, 2018, Marie Driscoll, Tegra's Human Resources Manager, provided Custodio with a letter dated December 13, 2018, purporting to "summarize[] the results of Tegra Medical's investigation into [Custodio's] recent allegation of sexual harassment."

    s. The letter stated that Tegra's "Human Resources Department conducted interviews with all the employees involved, including you, the accuser and all potential witnesses," and "[a]fter a thorough investigation . . . found that there is not sufficient evidence to conclude that sexual harassment did take place in this case."

    t. Prior to Custodio's complaint, other female employees had complained about Pacheco's sex-based comments and conduct at the Franklin facility and received similar letters.

    u. Defendant was aware of the sexually hostile work environment created by Pacheco because Pacheco was a serial harasser and multiple female employees complained about Pacheco's conduct to Defendant's Human Resources department, and to other of Defendant's managers and/or supervisors.

    v. However, Defendant failed to take appropriate remedial action to address and end the harassment.

    w. As a result of the foregoing, Custodio suffered harm.

13. Defendant engaged in unlawful employment practices, in violation of Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a), by denying Charging Party Family and Medical Leave Act ("FMLA") leave to which she was entitled in retaliation for engaging in protected activity, resulting in her constructive discharge.

a. As noted in paragraph 12(o), *supra,* on or about December 6, 2018, despite Pacheco's discouragement, Custodio complained to Debra Kling, Defendant's Human Resources Generalist, about Pacheco's unwelcome sexual conduct and comments.

b. On or about December 14, 2018, Custodio requested leave under the FMLA in order to care for her son, who was experiencing a serious health condition.

c. Custodio provided Marie Driscoll with a letter from her son's doctor supporting her request, which described her son's serious health conditions and her need for leave.

d. Driscoll immediately rejected Custodio's request for FMLA leave, stating that Tegra could not accommodate her request, and that "it's a business."

e. However, Custodio was entitled to FMLA leave and Tegra had approved Custodio's requests for leave to care for her son earlier in the year.

f. As of December 14, 2018:

   i. Custodio had worked for Tegra for at least twelve months;

   ii. Custodio had worked at least 1,250 hours for Tegra in the prior twelve months;

   iii. Tegra employed at least fifty employees at the Franklin facility; and

   iv. Tegra employed fifty or more employees in twenty or more workweeks in 2018.

g. Tegra denied Custodio's request for FMLA leave because she complained about sexual harassment.

h. Tegra's denial of Custodio's request for FMLA leave forced Custodio to leave her employment, effective December 28, 2018, and otherwise caused her harm.

14. The effect of the practice(s) complained of above in paragraphs 12-13 has been to deprive Custodio of equal employment opportunities and otherwise adversely affect her status as an employee because of her sex and because of her opposition to practices made unlawful by Title VII.

15. The unlawful employment practices complained of above in paragraphs 12-13 were intentional.

16. The unlawful employment practices complained of above in paragraphs 12-13 were done with malice or with reckless indifference to Custodio's federally protected rights.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from engaging in any employment practice that discriminates on the basis of sex, including harassment and the creation of a hostile work environment based on sex in violation of Title VII.

B. Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from engaging in any employment practice that discriminates against any individual in retaliation for asserting his or her rights under federal employment law or otherwise engaging in protected activity in violation of Title VII.

C. Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for women and those who oppose employment practices made unlawful by Title VII, and which eradicate the effects of its past and present unlawful employment practices.

D.     Order Defendant to make whole Charging Party Custodio by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices.

E.     Order Defendant to make Charging Party Custodio whole, by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above.

F.     Order Defendant to make Custodio whole by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices, including emotional pain, suffering, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

G.     Order Defendant to pay Custodio punitive damages for the malicious and reckless conduct described above, in amounts to be determined at trial.

H.     Grant such further relief as the Court deems necessary and proper in the public interest.

I.     Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

Dated: July 16, 2020
Boston, Massachusetts

                                    Respectfully submitted,

                                    SHARON FAST GUSTAFSON
                                    General Counsel

                                    GWENDOLYN YOUNG REAMS
                                    Associate General Counsel

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
131 M Street, N.E.
Washington, D.C. 20507

JEFFREY BURSTEIN
Regional Attorney

KIMBERLY CRUZ
Supervisory Trial Attorney
Florida Bar No. 153729
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
New York District Office
33 Whitehall Street, 5th Floor
New York, NY 10004-2112
(929) 506-5345
kimberly.cruz@eeoc.gov

 /s/ Caitlin Brown
CAITLIN BROWN
Trial Attorney
New York Bar No. 5219506
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
New York District Office
33 Whitehall Street, 5th Floor
New York, New York 10004
(929) 506-5277
caitlin.brown@eeoc.gov