IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
Eastern Division

|  |  |  |
|---|---|---|
| UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) ) | CIVIL ACTION NO. 1:20-cv-11344 |
| Plaintiff, | ) ) ) | **AMENDED COMPLAINT** |
| v. | ) ) | **JURY TRIAL DEMANDED** |
| TEGRA MEDICAL, LLC, | ) ) ) | |
| Defendant. | ) ) ) | |

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of sex and to provide appropriate relief to Charging Party, Zahira Custodio Othman ("Custodio"), and Tania Vargas. As alleged with greater particularity in paragraphs 13-18 below, the Equal Employment Opportunity Commission alleges that Defendant, Tegra Medical, LLC, d/b/a Tegra Medical, violated Title VII by subjecting Custodio and Vargas to a hostile work environment based on their sex. The Commission further alleges that Defendant retaliated against Custodio for objecting to and complaining about the sexually hostile work environment by denying her leave to which she was entitled under the Family and Medical Leave Act, resulting in her constructive discharge.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Sections 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-5(f)(1) and (3) ("Title VII") and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were and continue to be committed within the jurisdiction of the United States District Court for the District of Massachusetts.

## PARTIES

3. Plaintiff, the U.S. Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII, and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. §§ 2000e-5(f)(1) and (3).

4. At all relevant times, Defendant Tegra Medical, LLC ("Defendant" or "Tegra"), a Delaware corporation, has continuously been doing business in the State of Massachusetts, and has continuously had at least 15 employees.

5. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

## ADMINISTRATIVE PROCEDURES

6. More than thirty days prior to the institution of this lawsuit, Charging Party Zahira Custodio Othman filed a charge with the Commission alleging violations of Title VII by Defendant.

7. The Commission investigated the charge and found evidence to establish reasonable cause to believe that Custodio and another individual, Tania Vargas ("Vargas"), had been subjected to a hostile work environment based on sex.

8. On April 21, 2020, the Commission issued a Letter of Determination to Defendant notifying Defendant that the Commission found reasonable cause to believe that Defendant violated Title VII by subjecting Custodio and at least one other individual to a hostile work environment based on sex, and by retaliating against Custodio for opposing conduct made unlawful by Title VII. The Commission invited Defendant to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

9. The Commission engaged in communications with Defendant to provide Defendant the opportunity to remedy the discriminatory practices described in the Letter of Determination.

10. The Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

11. On June 12, 2020, the Commission issued to Defendant a Notice of Failure of Conciliation advising Defendant that the Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

12. All conditions precedent to the institution of this lawsuit have been fulfilled.

## **STATEMENT OF CLAIMS**

13. Since at least June 2017, Defendant has engaged in unlawful employment practices in violation of Section 703(a)(1) of Title VII, 42 U.S.C. 2000(e)-2(a)(1), by subjecting Custodio to a hostile work environment based on sex.

   a. Defendant Tegra operates a manufacturing facility in Franklin, Massachusetts.

b.  As of November 2010, Ivan Pacheco was employed by Defendant as a Machine Operator at Defendant's Franklin, Massachusetts facility.

c.  Pacheco is male, and speaks Spanish and English.

d.  In 2013, Defendant promoted Pacheco to the position of Manufacturing Supervisor.

e.  As a Manufacturing Supervisor, Pacheco's "Key Job Responsibilities" included "[e]ffectively manag[ing] personnel resources within [his] group including training, hiring, disciplinary actions and improving the performance of the team."

f.  In June 2017, Zahira Custodio Othman began working for Defendant as a Grit Blast Operator at Defendant's Franklin, Massachusetts location.

g.  Custodio is female, and a Spanish speaker.

h.  Custodio reported to Pacheco, who was her direct supervisor.

i.  Other Tegra employees warned Custodio that Pacheco was a "predator."

j.  Shortly after her hire, Pacheco began subjecting Custodio to unwelcome conduct and comments of a sexual nature, including but not limited to:

   i.  Commenting on her appearance and body on a daily basis, including telling her she looked sexy;

   ii.  Frequently staring at her breasts;

   iii.  Commenting to Custodio regarding other female employee's buttocks;

   iv.  Telling other female employees that Custodio looked so good;

   v.  Asking Custodio out to eat, which Custodio declined; and

   vi.  Making unwanted sexual advances.

k.  Custodio did not want Pacheco's attention, tried to ignore him, and declined his

4

invitations.

l. While Custodio later began reporting to a different manager, Mike Tracy ("Tracy"), Pacheco's harassment continued, including but not limited to:

   i. Telling Custodio that seeing other men train her made him jealous;

   ii. Regularly squeezing by Custodio in tight spaces;

   iii. Commenting on Custodio's buttocks, asking her to keep walking so he could look at them. When Custodio called Pacheco a stalker, he laughed;

   iv. Telling Custodio she looked "natural," squeezing her shoulder and hugging her;

   v. When Custodio hugged another male employee, Pacheco asked "Where's mine?";

   vi. When Custodio approached her new manager with an issue, Pacheco would say he was hurt that Custodio didn't call him; and

   vii. When Custodio asked Pacheco to bring her a souvenir from his trip to Philadelphia, Pacheco asked "What size thong?"

m. Pacheco's conduct was unwelcome and made Custodio uncomfortable and uneasy.

n. Pacheco discouraged Custodio from complaining, telling her that others tried to get him into trouble, but that he was a victim and the company believed in him.

o. On or about December 6, 2018, despite Pacheco's discouragement, Custodio complained to Debra Kling, Defendant's Human Resources Generalist, about Pacheco's unwelcome sexual conduct and comments.

p. As Custodio is a Spanish speaker, another Tegra employee acted as her interpreter during the conversation with Kling.

q. As detailed in paragraph 14 *infra*, in retaliation for Custodio raising this complaint about the ongoing sexual harassment to Kling, Defendant constructively discharged Custodio.

r. During Custodio's exit interview on December 28, 2018, Marie Driscoll, Tegra's Human Resources Manager, provided Custodio with a letter dated December 13, 2018, purporting to "summarize[] the results of Tegra Medical's investigation into [Custodio's] recent allegation of sexual harassment."

s. The letter stated that Tegra's "Human Resources Department conducted interviews with all the employees involved, including you, the accuser and all potential witnesses," and "[a]fter a thorough investigation . . . found that there is not sufficient evidence to conclude that sexual harassment did take place in this case."

t. Prior to Custodio's complaint, other female employees had complained about Pacheco's sex-based comments and conduct at the Franklin facility and received similar letters.

u. Defendant was aware of the sexually hostile work environment created by Pacheco because Pacheco was a serial harasser and multiple female employees complained about Pacheco's conduct to Defendant's Human Resources department, and to other of Defendant's managers and/or supervisors.

v. However, Defendant failed to take appropriate remedial action to address and end the harassment.

w. As a result of the foregoing, Custodio suffered harm.

14. Defendant engaged in unlawful employment practices, in violation of Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a), by denying Custodio Family and Medical Leave Act

("FMLA") leave to which she was entitled in retaliation for engaging in protected activity, resulting in her constructive discharge.

    a. As noted in paragraph 13(o), *supra*, on or about December 6, 2018, despite Pacheco's discouragement, Custodio complained to Debra Kling, Defendant's Human Resources Generalist, about Pacheco's unwelcome sexual conduct and comments.

    b. Driscoll became aware of Custodio's complaint, and warned Tracy and Pacheco the very next day, to be "overly cautious in how you say things," not to "touch anyone for any reason anywhere," and not to let their "guard down [because] once one person starts the train, they gather steam and passengers," among other statements.

    c. On or about December 14, 2018, Custodio requested leave under the FMLA in order to care for her son, who was experiencing a serious health condition.

    d. Custodio provided Marie Driscoll with a letter from her son's doctor supporting her request, which described her son's serious health conditions and her need for leave.

    e. Driscoll immediately rejected Custodio's request for FMLA leave, stating that Tegra could not accommodate her request, and that "it's a business."

    f. However, Custodio was entitled to FMLA leave and Tegra had approved Custodio's requests for leave to care for her son earlier in the year.

    g. As of December 14, 2018:

        i. Custodio had worked for Tegra for at least twelve months;

        ii. Custodio had worked at least 1,250 hours for Tegra in the prior twelve months;

      iii. Tegra employed at least fifty employees at the Franklin facility; and

      iv. Tegra employed fifty or more employees in twenty or more workweeks in 2018.

   h. Tegra denied Custodio's request for FMLA leave because she complained about sexual harassment.

   i. Tegra's denial of Custodio's request for FMLA leave forced Custodio to leave her employment, effective December 28, 2018, and otherwise caused her harm.

15. Since at least July 2018, Defendant has engaged in unlawful employment practices in violation of Section 703(a)(1) of Title VII, 42 U.S.C. 2000(e)-2(a)(1), by subjecting Tania Vargas to a hostile work environment based on sex.

   a. In July 2018, Tania Vargas began working for Defendant at Defendant's Franklin, Massachusetts location.

   b. Vargas is female, and was eighteen years old at the time she began working for Defendant.

   c. Vargas initially reported to Pacheco, who was her direct supervisor.

   d. Shortly after her hire, Pacheco began subjecting Vargas to unwelcome comments about her appearance, telling her, "you look good today," or other times, telling her that she looked "fat."

   e. Although after approximately six weeks Vargas was transferred to a new position, reporting to Mike Tracy, Pacheco continued to give Vargas unwanted attention.

   f. Pacheco went to Vargas's work station on a daily basis, smiling and staring at her while she was working.

   g. When this occurred, Vargas asked Pacheco if he needed anything.  Pacheco

responded, "no," and kept staring at her, smiling.

h.  Pacheco made unwelcome comments about Vargas's appearance on a daily basis, sometimes multiple times per day, which escalated over time.

i.  In one instance, Vargas went into the office her supervisor shared with Pacheco to ask him a question, but found Pacheco there alone.

j.  While in the office, Pacheco told Vargas that he had fantasized about his mother, who he said had "nice legs" and wore high heels. Pacheco told Vargas that this was the kind of woman he looked for, and that Vargas reminded him of his mother.

k.  Pacheco's comments to Vargas also included, but were not limited to:

   i.  When Vargas wore ankle bracelets, Pacheco told her they were "sexy," and that he "like[d] girls who wear anklets." Vargas stopped wearing ankle bracelets as a result of his comments;

   ii. When Vargas wore jeans, Pacheco looked at Vargas's legs and said, "damn girl, those things are going to pop on you." When Vargas turned to walk away from him, Pacheco looked at her buttocks, and said, "damn, I know why."

l.  Pacheco's comments were unwelcome. When Pacheco made these comments, Vargas stared at him blankly, walked away from him, or responded, "shouldn't you be in your office?" Pacheco then laughed, and walked away.

m.  Because of Pacheco's comments and conduct, Vargas began dreading coming to work, afraid of what he might say. Whenever Pacheco came into her work area, she became extremely anxious.

n.  Tracy was aware of Pacheco's conduct.

9

o. Pacheco also made comments about other women to Vargas or in her presence:

   i. When another female employee walked by Pacheco and Vargas, Pacheco looked at the employee's buttocks, and told Vargas, "it's too fake for me, I like stuff more natural."

   ii. Vargas also saw Pacheco target another woman who worked in Defendant's EZ Grind department:

      1. Pacheco told this woman, "I know you want me, I don't care about your boyfriend;"

      2. When this woman walked by, Pacheco would stare at her and make 'mmmm' noises;

      3. Pacheco said to Vargas of this woman, "she likes it when I bother her."

p. Vargas did not immediately report Pacheco's conduct and comments to Human Resources because she was aware that other complaints were not acted upon and she feared losing her job, or exposing her mother to retaliation, as she also worked at Tegra.

q. In or about mid-December, 2018, Pacheco approached a male co-worker, pointed at Vargas, and said, "imagine if I could take my big fat finger and stick it up her ass." Pacheco said that Vargas had "a great ass," that he "would fuck her," and "would fuck her mom." Pacheco continued his lewd comments regarding Vargas, saying he "would eat her ass," and wanted to "lick her pussy" and "her ass." Pacheco said, "she's so young, she probably doesn't know about this stuff."

r. Vargas could not hear these comments, but saw Pacheco leering at her, biting

his lip and smiling, as he spoke to her co-worker.

s. The male co-worker reported Pacheco's comments to Tegra's Human Resources Manager, Marie Driscoll, and told Vargas what Pacheco had said.

t. Human Resources did not reach out to Vargas as a result of the co-worker's complaint, or discipline Pacheco.

u. After learning of Pacheco's comments, Vargas reported Pacheco to her supervisor, Tracy, explaining what Pacheco had said and that she did not want to work near Pacheco.

v. Tracy dismissed Vargas's complaint, saying Pacheco was a "great guy," and took no action.

w. Vargas then met with Marie Driscoll and described to her Pacheco's ongoing comments and conduct toward her, including what Pacheco said to her male co-worker.

x. Driscoll told Vargas there had been no other complaints about Pacheco, even though Pacheco was a serial harasser and multiple female employees complained about Pacheco's conduct to Defendant's Human Resources department, and to other of Defendant's managers and/or supervisors, including Custodio.

y. Defendant failed to take appropriate remedial action to address and end the harassment.

z. As a result, Vargas suffered harm.

aa. After Vargas complained, she was transferred to work in the "white room" in which workers were required to wear full length gowns and latex gloves, even though Vargas objected, explaining that she was allergic to latex.

11

bb. Tracy told Vargas that this transfer was "to cool off the situation with Ivan [Pacheco]."

cc. Vargas worked in the white room that day as directed, but developed serious rashes on her hands due to her latex allergy, causing her severe pain.

dd. The next day, Vargas showed Tracy her rashes, and again insisted she could not work in the white room due to her allergy. Still, Tracy directed Vargas to work in the white room.

ee. Vargas did so, but continued to suffer severe pain from the allergic reaction. Vargas left work early that day, telling Tracy to count her absence as sick time, and asked him to speak to Driscoll.

ff. Vargas was ultimately allowed to return to her regular work station. Pacheco was not transferred, terminated or demoted, but continued to be employed by Tegra in the same position.

gg. Human Resources did not meet with Vargas again after her complaint. Instead, she received a letter from Driscoll dated December 26, 2018, nearly identical to that received by Custodio.

hh. This letter purported to "summarize[] the results of Tegra Medical's investigation into recent [sic] allegation of sexual harassment which [sic] an employee identified [Vargas] as the victim."

ii. The letter stated that Driscoll "interviewed all the employees involved, including you and all potential witnesses," and "[a]fter a thorough investigation . . . found that there is not sufficient evidence to conclude that sexual harassment did take place in this case."

jj. Vargas resigned shortly after receiving this letter due to the harassment she had

experienced and Tegra's failure to address her complaint.

16. The effect of the practice(s) complained of above in paragraphs 13-15 has been to deprive Custodio and Vargas of equal employment opportunities and otherwise adversely affect their status as employees because of their sex, and because of Custodio's opposition to practices made unlawful by Title VII.

17. The unlawful employment practices complained of above in paragraphs 13-15 were intentional.

18. The unlawful employment practices complained of above in paragraphs 13-15 were done with malice or with reckless indifference to Custodio's and Vargas's federally protected rights.

## **PRAYER FOR RELIEF**

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from engaging in any employment practice that discriminates on the basis of sex, including harassment and the creation of a hostile work environment based on sex in violation of Title VII.

B. Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from engaging in any employment practice that discriminates against any individual in retaliation for asserting his or her rights under federal employment law or otherwise engaging in protected activity in violation of Title VII.

C. Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for women and those who oppose employment practices

made unlawful by Title VII, and which eradicate the effects of its past and present unlawful employment practices.

    D.    Order Defendant to make whole Charging Party Custodio by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices.

    E.    Order Defendant to make Charging Party Custodio whole, by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above.

    F.    Order Defendant to make Custodio whole by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices, including emotional pain, suffering, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

    G.    Order Defendant to make Vargas whole by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices, including physical and emotional pain, suffering, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

    H.    Order Defendant to pay Custodio and Vargas punitive damages for the malicious and reckless conduct described above, in amounts to be determined at trial.

    I.    Grant such further relief as the Court deems necessary and proper in the public interest.

    J.    Award the Commission its costs of this action.

## **JURY TRIAL DEMAND**

The Commission requests a jury trial on all questions of fact raised by its complaint.

Dated: November 19, 2020
Boston, Massachusetts

Respectfully submitted,

SHARON FAST GUSTAFSON
General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
131 M Street, N.E.
Washington, D.C. 20507

JEFFREY BURSTEIN
Regional Attorney

KIMBERLY CRUZ
Supervisory Trial Attorney
Florida Bar No. 153729
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
New York District Office
33 Whitehall Street, 5th Floor
New York, NY 10004-2112
(929) 506-5345
kimberly.cruz@eeoc.gov

 /s/ Caitlin Brown
CAITLIN BROWN
Trial Attorney
New York Bar No. 5219506
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
New York District Office
33 Whitehall Street, 5th Floor
New York, New York 10004
(929) 506-5277
caitlin.brown@eeoc.gov

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants identified below. Paper copies will be sent to non-registered participants, if any, on November 19, 2020.

    Lyndsey M. Kruzer, *counsel for Defendant*
    lkruzer@choate.com

Dated: November 19, 2020
New York, New York

   /s/ *Caitlin D. Brown*
Caitlin D. Brown
Trial Attorney
New York Bar No. 5219506
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
New York District Office
33 Whitehall Street, 5th Floor
New York, New York 10004
(929) 506-5277
caitlin.brown@eeoc.gov